UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TISSUE EXTRACTION DEVICES, LLC.<br><br>Plaintiff,<br><br>v.<br><br>SUROS SURGICAL SYSTEMS, INC.,<br>and<br>HOLOGIC, INC.<br><br>Defendants. | Civil Action No. 08-C-140<br>Judge: Hon. James B. Zagel |

**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS
HOLOGIC, INC.'S AND SUROS SURGICAL SYSTEMS, INC.'S
<u>MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER</u>**

Defendants and Counterclaim Plaintiffs Suros Surgical Systems, Inc. ("Suros") and Hologic, Inc. ("Hologic") respectfully submit this memorandum in support of their motion to transfer this action to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

**I.   INTRODUCTION**

This case—which will impact Indiana companies and Indiana citizens—belongs in the Southern District of Indiana because the bulk of the parties, witnesses, and proof that will drive the resolution of this dispute reside in Indiana.  Specifically:

- The plaintiff in this action, Tissue Extraction Devices ("TED"), which owns a single patent and sells no products, is an Indiana corporation with a principal place of business in Indiana;

- The sole inventor named on the patent-in-suit—Jeffrey Schwindt—has been, and remains, a resident of Indiana, where he allegedly conceived of the claimed invention;

- Defendant Suros has its principal place of business in Indiana;

- The medical devices being accused of infringement were designed and developed by Suros in Indiana and are manufactured by Suros in Indiana;

- The documents describing the development, design, manufacture and sale of the accused products are kept at Suros' offices in Indiana; and

- The witnesses familiar with the structure, function, operation, and manufacture of the accused products are Indiana citizens.

In marked contrast, the Northern District of Illinois has no relevant connection to this case: none of the parties were incorporated or have a place of business in Illinois; none of the events giving rise to this action occurred in Illinois; and there are no known witnesses residing in Illinois. Indeed, the only apparent tie to this district is the Chicago address of TED's litigation counsel,[1] a factor this court has found to be irrelevant to the transfer analysis. *See Hemstreet v. Caere Corp.*, No. 90-C-377, 1990 WL 77920, at *5 (N.D.Ill. June 6, 1990) ("the convenience to plaintiff's counsel is not a proper consideration in this analysis").

Each of the three factors federal courts examine when determining whether to transfer venue therefore weighs in favor of a transfer to the Southern District of Indiana: ***First***, venue is proper in the Southern District of Indiana because both TED and Suros reside there; ***Second***, a transfer to the Southern District of Indiana would be far more convenient for the known witnesses; and ***Third***, it is in the public interest to allow the Southern District of Indiana to resolve a dispute involving Indiana-based companies, Indiana residents, and technology that was conceived and developed in Indiana.

## II.   FACTUAL BACKGROUND

### A.   Two of the Three Parties Reside in Indiana, While None Reside in the Northern District of Illinois.

#### 1.   The Plaintiff and Named Inventor of the Patent-In-Suit

Plaintiff TED is an Indiana corporation with a principal place of business at 5142 E. 65th Street, Indianapolis, Indiana. (TED Amended Complaint at ¶ 4.) TED is the assignee of a single issued United States Patent—the patent at issue in this litigation, U.S. Patent No. 7,316,726 ("the '726 patent"). The named inventor of the '726 patent is TED's president, Jeffrey Schwindt, who is identified on the patent as an Indiana resident. ('726 patent; Ex. B (Feb. 14, 2008 Boston Globe

---

[1] Notably, TED's litigation counsel, Dowell Baker, P.C., *also* has an office in Indiana. (Ex. A (printout from Dowell Baker website).)

article from Boston.com) at 1.)  According to a resume filed with the United States Patent and Trademark Office ("USPTO") in 2007, Mr. Schwindt resides in Indianapolis, Indiana and has worked in Indiana since at least 1989.  (Ex. C (Schwindt Resume).)  That resume indicates that, in 1993, Mr. Schwindt became president and owner of Air Systems Engineering ("ASE"), a company that designs pneumatic controls, in Indianapolis.  (*Id.*)  Since that time, Mr. Schwindt has served as ASE's president.  (*Id.*)  According to his resume, Mr. Schwindt has never resided or worked in Illinois.  (*Id.*)

      2.    **Suros and Hologic**

Defendant Suros has deep roots in Indiana.  Suros was founded in 2000 in Indiana and has operated out of Indiana ever since.  (TED Amended Complaint at ¶ 5; Ex. D (Declaration of Michael Hoffa) at ¶ 3.)  For the last eight years, Suros has designed, manufactured, and sold tissue removal technology, including the minimally invasive breast biopsy devices accused of infringement in this case, from its Indiana offices.  (Ex. D at ¶ 4; TED Amended Complaint at ¶ 14.)  Suros currently has 150 employees in Indiana.  (Ex. D at ¶ 7.)  It has never had an Illinois office, and has never designed, developed, or manufactured its technology in Illinois.  (*Id.*).

Defendant Hologic, which specializes in women's health imaging technology, acquired Suros in 2006.  (*See* TED Amended Complaint at ¶ 7.)  Hologic is a Delaware corporation with a principal place of business (and its headquarters) in Massachusetts, but, through its relationship with Suros, also operates a manufacturing facility located in Indianapolis, Indiana.  (*Id.* at ¶ 6; Ex. E (Excerpts of 2007 Hologic Form 10-K) at p. 29 (listing Indiana as place of operation).)  Hologic does not have any offices in Illinois.  (Ex. D at ¶ 8.)

    **B.**    **The Events Giving Rise to this Suit Occurred In Indiana.**

TED filed this action in January 2008, accusing Suros' Automatic Tissue and Collection ("ATEC") devices of infringing the claims of the '726 patent.  (TED Amended Complaint at ¶ 14.)

- 3 -

Suros and Hologic deny TED's infringement allegations and also contend that the claims of the '726 patent are unenforceable because, among other reasons, Mr. Schwindt falsely represented to the United States Patent and Trademark Office ("USPTO") that he is the sole inventor of the claimed subject matter. (Defendants' Answer to TED's Amended Complaint at ¶¶ 11-17, Fourth Affirmative Defense, and Third Counterclaim.)

As is set forth more fully below, the events giving rise to TED's infringement allegations and Suros and Hologic's counterclaims occurred in Indiana.

### 1. The Design and Development of the Accused ATEC Devices Occurred in Indiana.

The ATEC is a medical device used to remove breast tissue during breast biopsies. (Ex. D at ¶ 4.) The ATEC was developed in Indiana by two of Suros' founders, Indiana residents Joseph Mark and Michael Miller. (*Id*. at ¶ 5.) In 1990, Messrs. Mark and Miller founded a company called Promex Technologies, LLC in Franklin, Indiana to develop biopsy needles and devices. (*Id*.) After conceiving of the idea for the ATEC, Messrs. Mark and Miller left Promex in 2000 to found Suros in Indianapolis so that they could focus on the development of the ATEC. (*Id*.) All work relating to the development and design of the ATEC occurred in Indiana. (*Id.*) The FDA cleared the ATEC in 2001 and the ATEC was officially launched in 2002. (*Id*. at ¶ 6.)

### 2. Mr. Schwindt's Alleged Inventorship is Based on Events that Occurred in Indiana.

During the prosecution of the applications that led to the issuance of the '726 patent, Jeffrey Schwindt represented to the USPTO that he is the sole inventor of the subject matter claimed in the patent. (Ex. F (Declaration and Power of Attorney from '726 Prosecution History).) Suros and Hologic claim that these representations constitute inequitable conduct. (Answer at Fourth Affirmative Defense, and Third Counterclaim.) The resolution of this issue hinges on events that occurred in Indiana. Suros and Hologic assert that Messrs. Mark and Miller conceived of subject

matter claimed in the '726 patent while they were at Promex in Franklin, Indiana in the 1990s, before they met Mr. Schwindt. (*See id.*) Mr. Schwindt claims that *he* "designed and developed" breast biopsy technology while he worked for ASE—also in Indiana. (Ex. C.) None of TED's Complaint, Mr. Schwindt's resume, or the '726 patent indicate that any of Mr. Schwindt's alleged inventive activities occurred in Illinois. (TED Amended Complaint; '726 patent; Ex. C.)

### C. The Known Witnesses and Relevant Evidence Are Primarily Located in Indiana.

Whether the accused ATEC device infringes the claims of the '726 patent will depend on a comparison of the structure, function, and operation of the ATEC with the claims of the '726 patent. The known witnesses with knowledge of design, functionality, and capabilities of the ATEC are primarily located Indiana, where (as TED acknowledges) Suros resides. (TED Amended Complaint at ¶ 5.) In addition to Messrs. Mark and Miller, Dr. Timothy Goedde, who consulted on the development of the ATEC, also resides and works in Indiana. (Ex. D at ¶ 9.) The Suros engineers with knowledge of the ATEC are located in Indiana. (*Id.*)

The potential witnesses with knowledge of the patent-in-suit are also Indiana-based. TED is an Indiana company (TED Amended Complaint at ¶ 4), and Mr. Schwindt, the named inventor of the patent-in-suit, is an Indiana resident. (Ex. C.) Even the patent counsel that prosecuted the application that led to the issuance of the '726 patent is located in Indiana. (Ex. F.)

In contrast, there are no known witnesses in Illinois. None of the Suros founders live in Illinois. (Ex. D at ¶ 9.) And there is nothing in the '726 patent, TED's complaint, or Mr. Schwindt's resume to suggest that any witness with knowledge of the patent resides in Illinois. (TED Amended Complaint; '726 patent; Ex. C.)

The relevant documents and evidence are also in Indiana. Suros keeps its documents—including ATEC conception documents, ATEC design documents, ATEC marketing documents, and

ATEC engineering documents—at its Indiana headquarters. (Ex. D at ¶ 10.) Similarly, documents relating to Mr. Schwindt's work, including correspondence between Mr. Schwindt and Messrs. Mark and Miller and design documents from ASE (the company Mr. Schwindt operated at the time he purportedly conceived the alleged invention) are located at Suros in Indiana. (*Id.* at ¶¶ 10-11.)

### III.  LEGAL ARGUMENT

Under 28 U.S.C. § 1404(a), a district court may transfer a case to "any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The determination to transfer a case pursuant to § 1404(a) is reviewed only for abuse of discretion. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("District courts have broad discretion to grant or deny a motion to transfer under § 1404(a), and will not be reversed absent a clear abuse of discretion.").

District courts weigh three factors when determining whether to transfer a case: (1) whether venue is proper both in the transferor and transferee court; (2) whether the transfer is for the convenience of the parties and the witnesses; and (3) whether the transfer is in the interest of justice. *See Berol Corp. v. BIC Corp.*, No. 02-C-0559, 2002 WL 1466829, at *2 (N.D. Ill. July 8, 1992). In this case, where two of the three parties and the bulk of the evidence, potential witnesses, and relevant events are centered in Indiana, each of these factors weighs in favor of transferring this action to the Southern District of Indiana.

#### A.    Venue is Proper in this District and the Southern District of Indiana.

The parties agree that venue is proper in this district. (TED Amended Complaint at ¶ 3; Answer at ¶ 3.) Venue is also proper in the Southern District of Indiana because Suros resides in the Southern District of Indiana, has committed the alleged acts of infringement in the Southern District of Indiana, and has its only established place of business in the Southern District of Indiana. *See* 28

U.S.C. § 1400(b).  Accordingly, the Southern District of Indiana is a proper venue for this case.  *See Welch Scientific Co. v. Human Eng'g Instit., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969) (venue proper where defendant has established place of business in the district).

> **B.     Transfer of this Case to the Southern District of Indiana is for the Convenience of the Parties and Witnesses.**

Federal courts consider four factors to determine whether a transfer is for the convenience of the parties and the witnesses:  (1) the plaintiff's choice of forum; (2) the situs of the material events giving rise to the suit; (3) the ease of access to proof; and (4) the ease of access to witnesses.  *See First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04-C-2728, 2004 WL 1921059, at *2 (N.D. Ill. July 21, 2004).  These convenience factors weigh heavily in favor of a transfer to the Southern District of Indiana.

> **1.     The Plaintiff's Choice of Forum is Not Given Weight Where, as Here, the Plaintiff Files Suit in a Forum *Other* than Its Home Forum.**

When a plaintiff brings suit in a forum *other than its home forum*, its choice of venue is far less relevant than it would be otherwise.  *See Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832-33 (N.D. Ill. 1999) (plaintiff's forum preference given less deference where venue is not its home forum); *First Horizon*, 2004 WL 1921059, at *3 (plaintiff's choice of forum will not overpower a well-founded motion to transfer).  This is especially true where the forum in which the plaintiff files suit is not the location of the relevant events.  *See Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (plaintiff's forum preference "has minimal value" where the "events giving rise to the cause of action did not take place in the plaintiff's selected forum" (internal quotation marks omitted)).

TED's home forum is the Southern District of Indiana—where it is incorporated and has its principal (and ***only***) place of business.  (TED Amended Complaint at ¶ 4.)  The Southern District of Indiana is also the location where the relevant events leading to this suit occurred, including, for instance, the development of the accused ATEC devices and Mr. Schwindt's alleged inventive work.

(*See supra*, Sect. II. B.)  Accordingly, TED's arbitrary decision to file suit in this forum, which is not home to any of the parties or relevant events, holds little weight in the analysis of whether a transfer is appropriate.  *See Hemstreet*, 1990 WL 77920, at *4 (relevance of plaintiff's choice of forum is diminished if it "bears little or no relation to the events giving rise to the cause of action").

Indeed, the only apparent connection between this case and the Northern District of Illinois is that TED's litigation counsel—in addition to having an office in Indiana—also has an office in Chicago.  This court has made clear on numerous occasions, however, that the location of a party's counsel is not relevant to whether a transfer is in the convenience of the parties and the witnesses.  *See Hemstreet*, 1990 WL 77920, at *5 ("the convenience to plaintiff's counsel is not a proper consideration in this analysis"); *Bankers Life & Cas. Co. v. Case*, No. 05-C-6532, 2005 WL 3542523, at *3 (N.D. Ill. Dec. 23, 2005) ("The fact that the lawyers in this matter are all located in Chicago, Illinois does not dictate keeping this matter in the Northern District of Illinois").

        2.        **The Situs of Material Events Weighs in Favor of Transfer to the Southern District of Indiana.**

The situs of material events for purposes of a § 1404(a) analysis is the location where the "defendant's decisions and activities that gave rise to the claim took place."  *First Horizon*, 2004 WL 1921059, at *3.  Because the design, development, and manufacture of the accused ATEC products all occurred in Indiana, and because the alleged invention claimed in the '726 patent was developed in Indiana, Indiana is the location of the relevant events giving rise to this suit.

With respect to the infringement allegations made by TED, the situs of material events is the location in which the alleged infringer made the design choices for the accused products.  *See id.* (situs of material events is location where defendant made decisions regarding accused product and manufactured the product); *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983) (location of material events is where development, research, and production of accused

products took place). The accused ATEC devices were conceived, designed, and developed in Indiana. (Ex. D at ¶¶ 3-5.) Messrs. Mark and Miller came up with the idea for the ATEC in Indiana; they designed the ATEC in Indiana; and they developed the ATEC at Suros in Indiana. (*Id.* at ¶ 5.)

With respect to Suros and Hologic's counterclaim that Mr. Schwindt committed inequitable conduct by falsely representing that he is the sole inventor of the subject matter claimed in the '726 patent, the location of material events is the site of Mr. Schwindt's alleged inventive actions. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 903 (N.D. Ill. 2001) (situs of material events is location where underlying actions giving rise to the dispute occurred). Mr. Schwindt's supposed inventive activities (as well as the actions of Messrs. Mark and Miller that contradict Mr. Schwindt's claim of sole inventorship) occurred in Indiana. (Answer at Fourth Affirmative Defense, and Third Counterclaim; Ex. C.) In light of the above facts, Indiana is the center of the events at issue in this dispute. *See Plotkin*, 168 F. Supp. 2d at 903 (situs of material events weighs in favor of transfer to Texas where decisions that gave rise to the alleged improper conduct were made in Texas).

        3.    **The Location of the Relevant Proof Weighs in Favor of Transfer to Indiana.**

That the evidence in this case is located in Indiana also favors transfer to the Southern District of Indiana. Evidence relating to TED's infringement accusations, including ATEC conception documents, design documents, marketing/sale documents, and product development documents, are kept at Suros' headquarters, which are in Indiana. (*See supra*, Sect. II. C.) Similarly, evidence relevant to Mr. Schwindt's alleged inequitable conduct, such as documents relating to the work that Messrs. Mark and Miller performed before meeting Mr. Schwindt and Mr. Schwindt's alleged conception activities, are also located in Indiana. (*See id.*) This factor therefore weighs in favor of a transfer. *See Colida v. Kyocera Wireless Corp.*, No. 02-C-7348, 2003 WL 1741396, at *2

(N.D. Ill. April 1, 2003) (location of evidence favors transfer to California where "vast majority" of documents and technical materials are in California).

### 4. The Location of the Known Witnesses Weighs in Favor of Transfer to Indiana.

As described above, most of the potential witnesses with knowledge relevant to this suit are also in Indiana. Joseph Mark and Michael Miller, along with other engineers who helped develop the ATEC, reside in Indiana. (*See supra*, Sect. II. C.) The Suros employees who have knowledge of the engineering, structure, and operation of the ATEC are also in Indiana. (*See id.*) According to his resume, the named inventor, Mr. Schwindt, also lives in Indiana and has worked in Indiana for at least the ***last two decades***, including the time during which he allegedly conceived of the subject matter of the '726 patent. (Ex. C.) Transfer to the Southern District of Indiana would facilitate live testimony from these witnesses. Keeping this litigation in the Northern District of Illinois, on the other hand, would impose unnecessary burdens on these witnesses, including the time and expense associated with travel. *See First Horizon*, 2004 WL 1921059, at *4-5 (transferring case to Florida where defendant's potential witnesses are located in Florida, not Illinois); 15 Wright, Miller & Cooper, *Federal Pract. & Proc.: Jurisprudence 3d* § 3851 at 199 (2007) ("Often cited as the most important factor on a motion to transfer under section 1404(a) … is the convenience of witnesses who are important to the resolution of the case"). Transferring the case also increases the likelihood that these witnesses will appear at trial because the Indiana court can compel Indiana witnesses to appear at trial. The Northern District of Illinois, on the other hand, has no jurisdiction over any Indiana witness who happens to live more than 100 miles from this district, including any witness residing in Indianapolis (which is more than 150 miles from Chicago). *See* Fed. R. Civ. P. 45; *Nasser v. Soo Line R.R. Co.*, No. 96-C-8636, 1997 WL 223063, at *2 (N.D. Ill. Apr. 25, 1997)

(transferring case to Southern District of Indiana because witnesses in Indiana are outside subpoena power of Northern District of Illinois).

In sum, because the events that gave rise to this dispute occurred in Indiana, the majority of the relevant documents are in Indiana, two of the three parties operate in Indiana, and the potential witnesses reside in Indiana, Indiana is the more convenient forum for the resolution of this action. *See First Horizon*, 2004 WL 1921059, at *2-5 (granting motion to transfer to Florida where material events, documents, and potential witnesses centered in Florida).

### C. Transfer to the Southern District of Indiana is in the Public Interest.

The final factor in the § 1404(a) analysis—whether a transfer is in the public interest—similarly favors transferring this case to Indiana. Illinois has no particular interest in this case. No Illinois business is a party to this suit. None of the events regarding the development of the accused ATEC products occurred in Illinois. And the key witnesses are not Illinois residents. In short, there is no identifiable public interest that will be served by keeping this case in Illinois. *See Bryant*, 48 F. Supp. 2d at 835 (public interest weighs in favor of transfer where none of the relevant parties are Illinois citizens and operative events did not occur in Illinois).

Indiana, however, has a significant interest in this litigation. This dispute (1) arose from actions that occurred in Indiana; (2) will be decided by proof located in Indiana and testimony provided by Indiana citizens; and (3) will impact two Indiana companies. Transfer of this action to the Southern District of Indiana is very much in the public interest. *See Somfy, SAS v. Rollease, Inc.*, No. 04-C-2695, 2004 WL 4963446, at *1, 4 (N.D. Ill., July 30, 2004) (interests of justice weigh in favor of transfer to Connecticut where defendant has principal place of business in Connecticut and no parties are located in Illinois).

## IV. CONCLUSION

For the foregoing reasons, Suros and Hologic respectfully request that this action be transferred to the Southern District of Indiana.

Dated: March 24, 2008.

        Respectfully submitted,

        **SUROS SURGICAL SYSTEMS, INC.** and
        **HOLOGIC, INC.** *Defendants/Counterclaim Plaintiffs*

        By: */s/ Jennifer Yule DePriest*
            Marshall Seeder (Bar No. 03127674)
            Jennifer Yule DePriest (Bar No. 6272137)
            Reed Smith LLP
            10 South Wacker Drive
            Suite 4000
            Chicago, IL 60606
            Telephone: (312) 207-1000
            Facsimile: (312) 207-6400
            (jdepriest@reedsmith.com)

Of Counsel:

Lisa J. Pirozzolo
Jordan L. Hirsch
WILMER CUTLER PICKERING HALE AND DORR LLC
60 State Street
Boston, MA 02109
(617) 526-6000

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2008, I electronically filed **DEFENDANTS AND COUNTERCLAIM PLAINTIFFS HOLOGIC, INC.'S AND SUROS SURGICAL SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Christopher E. Haigh | Geoffrey A. Baker |
| IPADVISORS, INC. | DOWELL BAKER, P.C. |
| 2038 North Clark, No. 105 | 229 Randolph Street |
| Chicago, IL 60614 | Oak Park, IL 60302 |

By: */s/ Jennifer Yule DePriest*
　　　Marshall Seeder (Bar No. 3127674)
　　　Jennifer Yule DePriest (Bar No. 6272137)
　　　*Counsel for Defendants*
　　　REED SMITH LLP
　　　10 South Wacker Drive, Suite 4000
　　　Chicago, IL 60606
　　　(312) 207-1000
　　　(312) 207-6400 – Fax
　　　jdepriest@reedsmith.com

CHILIB-2168870.1-999906-00810