IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Tissue Extraction Devices, LLC<br><br>    Plaintiff,<br><br> v.<br><br>Suros Surgical Systems, Inc., and Hologic Inc.<br><br>    Defendants. | Civil Action No. 08 C 140<br><br>Judge: Zagel<br><br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER**

Not surprisingly, Defendants seek to transfer this case to a venue that would prolong the trial time, inconvenience the Plaintiff, and potentially provide a home-court advantage to one of the Defendants. However, Defendants mislead the Court in their representation of the relevant facts and case law that should control such a decision. Upon consideration of the proper facts and the controlling case law, this Court should find that transfer to the Southern District of Indiana is inappropriate.

 **I. BACKGROUND AND RELEVANT FACTS**

 **A. Overview**

This matter relates to industry-changing and novel contributions that Jeffrey Schwindt (hereinafter "Schwindt"), a founding partner of Tissue Extraction Devices, LLC ("TED"), developed jointly with predecessors of Defendant Suros Surgical Systems, Inc. (hereinafter "Suros"). In March 2000, Schwindt and Suros' predecessors began to jointly develop a product that could facilitate breast biopsies in a magnetic resonance imaging ("MRI")

1

environment, among other places. At the time, both Suros' predecessors and Schwindt pursued patent protection for their various asserted contributions.

Not long after, the present corporate entity of Suros was created in order to further develop the technology, and Schwindt contributed both financially and technologically to the continued joint development with Suros. However, when Suros began to see the potential for large profits, and gained knowledge that Schwindt had filed for patent protection as well, Suros ostracized Schwindt, pushing him away from further work and telling him that his contributions were of no significance. Of course, this was no more than Suros' first steps in stealing Schwindt's technological breakthroughs. The Patent-in-Suit is the first of Schwindt's patents to issue from his novel approach to pneumatic circuitry – a novel approach that Suros is happy to use, but refuses to pay for as the following more detailed facts show.

### B. Schwindt's New Circuitry and Suros' First Failed Prototype

In March of 2000, a business associate introduced Schwindt to a company known then as Promex. Exhibit A, Declaration of Jeffrey R. Schwindt, ¶¶ 10 - 12. On March 16, 2000, Schwindt met in person with Joe Mark (hereinafter "Mark"), co-founder of Promex,[1] at the Promex facility. Exhibit A, ¶ 13. Mark disclosed a concept and eventually a non-functional prototype handheld biopsy device that Promex had been developing. Exhibit A, ¶¶ 13, 18. The prototype used an air cylinder and a battery powered electric motor with an offset gear drive to spin an inner cannula. Exhibit A, ¶ 18. The housing was made from a Maglite® flashlight housing. Exhibit A, ¶ 18. Promex had no control system to run the prototype and no internal engineering capability to design or build a control system. Exhibit A, ¶ 22. See

---

[1] As will be shown at trial, Mark went on to profit handsomely from the sale of Suros to Hologic, Inc. ("Hologic").

also Exhibit B, Declaration of John Hancock (a named inventor on U.S. Patent No. 6,758,824 to Suros, "the Suros Patent"), ¶ 25, 27 - 29. A number of design issues plagued the Promex prototype. Exhibit A, ¶¶ 19 -21.

After learning of Schwindt's extensive background with pneumatic circuits, Mark agreed that Schwindt was well qualified to assist in developing a pneumatic circuit that would control the handheld biopsy device. Exhibit A, ¶ 15. Neither Joe Mark nor Mike Miller, co-founders of Promex and named inventors on the '824 patent, had sufficient experience with pneumatic circuits to be able to design and develop a pneumatic circuit that would control the handheld biopsy device. Exhibit A, ¶ 22. Exhibit C, Declaration of Richard M. Wollard Sr., ¶ 16. Nor could Promex develop or manufacture an air motor that could operate the handheld biopsy device. Exhibit D, Declaration of Jeffery W. Stark, ¶¶ 11 – 14. In fact, Promex was unable to even provide drawings that could enable a manufacturer to design an air motor for the handheld biopsy device. Exhibit D, ¶ 18.  Even Miller later acknowledged that Schwindt's novel circuitry is depicted in the '824 patent. Exhibit A, ¶ 72.

    C.    **Schwindt Agrees to Co-Develop**

Schwindt began to feel personally motivated to help with the project due to his wife's mother's death at the age of 40 from breast cancer. Exhibit A, ¶ 25. Based on his knowledge and personal experiences, Schwindt agreed to assist Promex with developing a pneumatic control circuit for the handheld biopsy device. Exhibit A, ¶ 25. Exhibit C, ¶ 14. Both Promex and Schwindt realized that a pneumatically operated circuit would be critical to any device that would be used in an MRI room. Exhibit A, ¶ 22.

Over the next several months, Schwindt conceived of and continuously developed the pneumatic control circuit for the handheld biopsy device, as well as several other components

that would be used in conjunction with the handheld biopsy device. Exhibit A, ¶¶ 16 - 37. Exhibit B, ¶¶ 34 – 43. Exhibit C, ¶¶ 19, 20. Exhibit D, ¶¶ 6 – 9, 23 – 27. In fact, according to the Vice President of Operations for Suros, Schwindt was the sole architect of the air logic system that controlled the handheld biopsy device. Exhibit C, ¶¶ 15, 18. See also Exhibit D, ¶ 28. This logic system was a critical component of the handheld biopsy device and drove the performance of the handheld biopsy device. Exhibit C, ¶ 17.

On or about September 20, 2000, Schwindt developed, built, and delivered a pneumatic prototype of a control system. This prototype (as well as Schwindt's earlier models) successfully operated the handheld biopsy device. Exhibit A, ¶¶ 27, 55 - 60. Schwindt (through his company, ASE) billed Promex for this prototype and a purchase order was issued by Promex on September 20, 2000. Exhibit A, ¶ 34.

### D.    Suros Requests Schwindt Technology under False Pretenses, and then Asserts It as Its Own

Shortly after Schwindt delivered his pneumatic circuit prototype, Promex requested that Schwindt deliver his circuit drawings, while offering no stated purpose for the drawings. Exhibit A, ¶ 61. Schwindt provided enabling pneumatic circuit drawings to Promex dated October 10, 2000 and October 20, 2000. Exhibit A, ¶¶ 36, 37, 61. Unbeknownst to Schwindt at the time, the circuit drawings he provided were included in the patent application that eventually resulted in the Suros Patent. Exhibit A, ¶¶ 38 – 44, 61. Remarkably, even though Promex (and later Suros) had no internal capability to create the circuit diagram shown in Fig. 10 of the Suros Patent, and even though patent claims explicitly covered the circuit, Schwindt was never listed as an inventor on the Suros Patent. Exhibit B, ¶ 50. Suros' failure to list Schwindt as an inventor on the Suros Patent was a clear attempt to defraud Schwindt and the USPTO.

Suros and Hologic have attempted to further defraud the USPTO in submissions they have made during the pendency of TED's patent applications. In every published patent application assigned to TED, Defendants have submitted a "Protest," citing the very same "evidence" that Defendants now rely upon for identical assertions of invalidity. Exhibit A, ¶ 77. Nonetheless, in every case, the USPTO has dismissed the Defendants' Protests. Indeed, the USPTO's subsequent issuance of the Patent-in-Suit affirmed Schwindt's patentable and integral role in the development of the breast biopsy product accused of infringement in this action. The USPTO's dismissal of Suros and Hologic's Protests also evidence the validity of TED's patent.

### E.   Suros, Hologic, and Numerous Hospitals and Clinics in the N.D. Illinois Are Presently Infringing TED's patent

Prior to and since the filing of this action, TED has researched the infringement and distribution of the Hologic and Suros products. Through such research, TED has confirmed that at least nine hospitals and medical clinics in the Northern District of Illinois have been sold and are operating the Accused Product, and are therefore infringing the Patent-in-Suit. Exhibit A, ¶ 79. Indeed, even during the pendency of the Patent-in-Suit, Schwindt traveled repeatedly to the Northern District of Illinois to service Accused Products he built. Exhibit A, ¶ 80. Meanwhile, TED's research has not confirmed infringers in the Southern District of Indiana. Exhibit A, ¶ 85. Regardless, significant infringing activity occurred and continues to occur in this judicial district. This Court is clearly the proper venue to address that infringement.

### F.     Defendants Have Repeatedly Traveled to This District, and TED and Hologic Executives Held In-Person Discussions in This District

For at least the past two years, Hologic has repeatedly traveled to the Northern District of Illinois to participate in the Radiological Society of North America's ("RSNA") annual meeting and trade show, hosted at McCormick Place in Chicago. During each of these trade shows, Hologic set up a display relating to the Accused Products, offered the Accused Products for sale, and provided information on the Internet illustrating how to find Hologic at the trade show. Exhibit A, ¶¶ 86-87. This, too, is infringing activity in this judicial district that should be addressed in this Court.

During each of the 2006 and 2007 RSNA shows, representatives of TED discussed the Accused Product with Hologic representatives. Additionally, during the 2007 RSNA show, executives from both Hologic and TED met at length in person to discuss TED's involvement in the development of the Accused Product. Exhibit A, ¶¶ 88-89.

With this factual background in mind, TED turns the Court's attention to the standards for determining whether to transfer this action.

### II.     ARGUMENT

28 U.S.C. §1404 sets forth when a district court may transfer a case:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. §1404(a). As this Court recently noted, transfer is proper under this section if: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice." *Mitchell v. First Northern Credit Union*, No. 07 C 1891, 2007 U.S. Dist. LEXIS 74921 at *4 (N.D. Ill. October 4, 2007).

Importantly, "In a motion to transfer venue, the moving party bears the burden of establishing that the transferee forum is 'clearly more convenient.'" *Trouve Enterprises v. Newell Rubbermaid, Inc. et al.*, No. 3:07-cv-0601-bbc, 2008 U.S. Dist. LEXIS 7827, at *1 (W.D. Wis. Feb. 1, 2008), *citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). For the reasons set forth below, Defendants have not met their burden and cannot show that the Southern District of Indiana is "clearly more convenient."

### A.　Venue Would Not Be Proper in the Transferee Court

Both parties agree that venue could be proper in either the N.D. Illinois or the S.D. Indiana *with the present list of defendants*. However, given TED's continuing research into the Defendants' infringing sales and activity in the Northern District of Illinois, TED expects to modify the list of Defendants to include a number of clinics and hospitals located in this judicial district.

While the Southern District of Indiana may be a proper venue for Suros, it is certainly not proper for the infringers residing only in this judicial district, and infringing in only this judicial district. "In patent infringement cases, venue is proper in the judicial district: (1) where the defendant resides; or (2) where the defendant has committed acts of infringement and has a regular and established place of business." *Mitchell* 2007 U.S. Dist. LEXIS 74921 at *8. If transfer is to be granted, TED's actions against any clinic or hospital defendants in Chicago could not be transferred. Rather, a separate action would have to be maintained in the Northern District of Illinois. In contrast, if the action was not transferred, TED could incorporate its growing list of Chicago infringers in this action. For this reason alone, transfer should not be granted.

Moreover, even if the defendant list remains as it is, transfer does not weigh in favor of Defendants in this prong of the test. Rather, this prong is indeterminate at best. Accordingly, transfer should not be granted based on the first prong of the test.

### B.  Transfer is Not Clearly More Convenient to the Relevant Parties and Witnesses

Defendants assert (incorrectly) that transfer to the Southern District of Indiana would be more convenient[2] for the parties and witnesses. While Plaintiff acknowledges that this may be true for Suros, this is not true for Hologic or TED. Moreover, Defendants have failed to provide the support required in order to assert that this factor weighs in their favor. Accordingly, this prong of the test is also not satisfied.

#### i.  The Plaintiff's Choice of Forum "Should Rarely Be Disturbed"

TED's decision to bring a patent infringement action in this venue is entitled to substantial deference. Indeed, this court opined just months ago – in a patent infringement case no less – that "a plaintiff's choice of forum is given *substantial* weight." *Mitchell* 2007 U.S. Dist. LEXIS 74921 at *7 (emphasis added). Furthermore, although "it is not the only factor a court must consider … Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum *should rarely be disturbed.*" *Id.* (emphasis added) (citing *In re National Presto Industries, Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) and *Zelinski v. Columbia 300, Inc.*, 335 F.3d 663, 643 (7th Cir. 2003)). Accordingly, the Defendants' assertions that TED's choice of forum is "not given weight" is unfounded.[3]

---

[2] Notably, the requisite standard is "clearly more convenient," rather than merely convenient, as Defendants suggest. *See Coffey v. Van Dorn Iron Works,* 796 F.2d at 220.

[3] Notably, even the case law Defendants rely upon dictates a different standard than what Defendants suggest: "Generally, the plaintiff's choice of forum is entitled to substantial deference." *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 832 (N.D. Ill. 1999)

8

### ii. The Situs of Material Events Does Not Favor Transfer

Consideration of the material events does not weigh in favor of transfer. As noted above, "In patent infringement cases, venue is proper in the judicial district: (1) where the defendant resides; or (2) where the defendant has committed acts of infringement and has a regular and established place of business." *Mitchell* 2007 U.S. Dist. LEXIS 74921 at *8. Defendants admit that they have sold the Accused Product in this district. Defendant's Answer, ¶10. Accordingly, the relevant "event" – infringement – is occurring in this very district.

Moreover, Defendants have repeatedly appeared in person in this district (including infringing activity at trade shows at McCormick Place), and have repeatedly met with representatives of TED in this district. Exhibit A, ¶¶ 86-89. Such conversations were not merely coincidental in nature, but were detailed conversations around a boardroom table regarding inventorship and ownership of intellectual property. Indeed, in November 2007, TED decision makers met with the president and COO of Hologic, Robert Cascella, as well as the chairman emeritus and CTO of Hologic, in Chicago, hoping to come to resolution prior to litigation.[4]

Finally, as set forth above, other likely defendants reside in Chicago and will necessitate litigation in the Northern District. Such likely defendants are headquartered in Chicago and their infringing actions are limited to this district. Accordingly, for all of these reasons, this prong of the test does not support transfer to the Southern District of Indiana.

---

[4] Notably, The Defendants' brief fails to acknowledge that Hologic is the parent company of Suros, and is clearly the decision-maker for any matters in this action. When TED met with Hologic executives in Chicago, none of the Suros executives were present, despite their immediate proximity and availability. Exhibit A, ¶ 90. Accordingly, any arguments that transfer is more convenient for the decision-makers and interested persons of the parties are unfounded.

### iii. The Location of Relevant Proof Does Not Favor Transfer

For similar reasons, the location of relevant proof does not weigh in favor of transfer. In patent infringement, the most important analysis is whether the Accused Product infringes the patent. Here, the Defendants have already admitted that the Accused Product is in this district. Defendant's Answer, ¶10. Moreover, Schwindt has serviced Accused Products on-site in this district. Exhibit A, ¶80. Whether the Accused Products infringe the Patent-in-Suit can be determined by reviewing evidence already in this district.

Furthermore, documents relating to the formation of TED, the intellectual property held by TED, and TED's responses to the Defendants' previous (and unsuccessful)[5] attempts to invalidate TED's patents are all held in this district. Exhibit A, ¶ 91. Indeed, every document submitted by TED and Defendants during the prosecution of the Patent-in-Suit and the co-pending suggested interference can be found here in this district. Exhibit A, ¶ 91. Accordingly, this prong also weighs against transfer to the Southern District of Indiana.

### iv. Location of Witnesses Does Not Favor Transfer

Finally, the Defendants assert that the location of key witnesses weighs in favor of transfer to the Southern District of Indiana. This assertion is also unfounded.

> Defendants argue that transfer is appropriate because many of their important documents and employee witnesses are located [outside of this district]. However, the traditional concerns related to ease of access to sources of proof and the cost of obtaining attendance of witnesses have been diminished by technological advancements. The ease with which documents and data may be transported causes the location of sources of proof to be a neutral factor in this case.

---

[5] TED draws attention to the Protest attached to Schwindt's Declaration as Exhibit 33, which Suros and Hologic have repeatedly submitted to the United States Patent and Trademark Office in an attempt to invalidate TED's patent applications. Notably, each and every time the Protest was submitted, it was rejected by the USPTO. Defiantly, Defendants attempt to make the same arguments and cite the same "support" in this matter.

> Further, the location of defendants' employee witnesses is not an important factor because of the assumption that "witnesses within the control of the party calling them, such as employees, will appear voluntarily."

*Trouve Enterprises*, 2008 U.S. Dist. LEXIS 7827, at *6.

Significantly, Defendants have not suggested a single third-party witness that they would call. Instead, they misleadingly assert that Suros' own employees "are outside subpoena power of the Northern District of Illinois."[6] This is simply not the case. Suros' "witnesses within the control of the party calling them, such as employees, will appear voluntarily." *Trouve Enterprises*, 2008 U.S. Dist. LEXIS 7827, at *6. For this reason alone, Defendants' argument fails.

Moreover, Defendants provide no supportive evidence of the testimony or materiality of the alleged witnesses that it plans to call. In supporting a motion to transfer, the defendant is obligated

> to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included. [The defendant] supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony.

*Heller Financial, Inc. v. Midwhey Powder Co., Inc. et al.,* 883 F.2d 1286, 1293-94 (7th Cir. 1989) (affirming Hon. Zagel's opinion).

Because Defendants provide only a vague assertion that it plans to call witnesses, and nothing supporting the reasons such witnesses may be material to the case, the Defendants have failed to adequately support their assertion that certain key witnesses will be needed for material testimony. Furthermore, this speaks nothing to the fact that the Defendants'

---

[6] Defendants' Memorandum, p. 11.

decision-makers with whom TED has been negotiating are all located outside of Indiana, as referenced above.

For all of these reasons, this Court should find that transfer would not be convenient for the parties and witnesses.

    **C.**    **Transfer is Not in the Interest of Justice**

Finally, but certainly not insignificantly, transfer of this case to Indiana will not be in the interest of justice.

> The "interest[s] of justice" include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case.

*Id., citing Coffey v. Van Dorn Iron Works*, 796 F.2d at 221. As noted above, TED, in its ongoing discovery efforts, has found that at least nine clinics and hospitals in the district have infringed the Patent-in-Suit. TED intends to name at least some of those clinics in this action. Accordingly, for this reason alone, this matter should not be transferred to Indiana.

Additionally, this district has a significantly smaller median time from filing to disposition than that of the Southern District of Indiana, which greatly weighs against transfer.

> Plaintiffs admit that their choice of venue is motivated by this court's history of swift case resolution. … Even greater importance is placed on a speedy resolution in patent infringement cases "where rights are time sensitive and delay can often erode the value of the patent monopoly." In fact, "[t]he likelihood of delay, the resulting increase in litigation expenses to the parties, and harm to [the] patent monopoly weigh heavily in favor of the matter's prompt resolution in [the relatively speedier] district."

*Trouve Enterprises*, 2008 U.S. Dist. LEXIS 7827, at *8-9 (finding that a difference of five months in median time from filing to disposition was significant and weighed against transfer).

In 2006, the Northern District of Illinois had a median time from filing to disposition of 6.5 months. During the same period, the Southern District of Indiana had a median time of 10.9 months.[7]

Similarly, in 2007, the Northern District of Illinois had a median time from filing to disposition of 6.2 months. During the same period, the Southern District of Indiana trailed again, with a median time of 9.9 months.[8]

Because Plaintiff would be prejudiced by a transfer to the Southern District of Indiana and disposition of this case would be significantly longer, it is in the interest of justice to maintain the present action in this district.

### III.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Transfer should be denied.

Respectfully submitted,

Date: April 8, 2008

/s/ Christopher E. Haigh
Christopher E. Haigh
IPADVISORS, INC.
2038 N. Clark, #105
Chicago, Illinois  60614
(312) 242-1685
(312) 277-9002  Facsimile

/s/ Geoffrey A. Baker
Geoffrey A. Baker
Illinois Bar No. 6236658
DOWELL BAKER, P.C.
229 Randolph Street
Oak Park, IL 60302
(708) 660-1413
(312) 873-4466 (facsimile)

Attorneys for Plaintiff Tissue Extraction Devices, LLC

---

[7] *See* Federal Court Management Statistics, www.uscourts.gov/cgi-bin/cmsd2006.pl.
[8] *See* Federal Court Management Statistics, www.uscourts.gov/cgi-bin/cmsd2007.pl

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 8, 2008 the PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER was filed via the Court's ECF system, which in turn served the following counsel for Defendant:

M. Marshall Seeder (mseeder@sachnoff.com)
Jennifer Yule DePriest (jdepriest@reedsmith.com)
REED SMITH LLP
10 S. Wacker Drive, Ste. 4000
Chicago, IL 60606

Jordan Hirsch (jordan.hirsch@wilmerhale.com)
Lisa J. Pirozzolo (lisa.pirozzolo@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109